1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **EASTERN DISTRICT OF CALIFORNIA**

9

10

11 JENNIFER ANN RODRIGUEZ,                ) Case No.: 1:19-cv-00082-BAM
                                         )
12                     Plaintiff,        ) **ORDER REGARDING PLAINTIFF'S**
                                         ) **SOCIAL SECURITY COMPLAINT**
13         v.                            )
                                         )
14 ANDREW M. SAUL,[1] Commissioner of    )
   Social Security,                      )
15                                       )
                                         )
16                     Defendant.        )
   _____)

17

18                        **INTRODUCTION**

19         Plaintiff Jennifer Ann Rodriguez ("Plaintiff") seeks judicial review of a final decision of the

20 Commissioner of Social Security ("Commissioner") denying her application for disability insurance

21 benefits under Title II of the Social Security Act. The matter is currently before the Court on the

22 parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A.

23 McAuliffe.[2]

24

25

26 _____

27 [1]    Andrew M. Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of
   Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
28 [2]    The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including
   entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Doc. Nos. 7, 15.)

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on April 20, 2015.  AR 156-57.[3]  Plaintiff alleged that she became disabled on September 26, 2014, due to two back surgeries.  AR 172.  Plaintiff's application was denied initially and on reconsideration.  AR 80-83, 87-91.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Matilda Surh held a hearing on October 4, 2017, and issued an order denying benefits on February 9, 2018.  AR 12-25, 30-55.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

### Hearing Testimony

The ALJ held a hearing on October 4, 2017, in Fresno, California.  Plaintiff appeared with her attorney, Lars Christensen.  Judith Najarian, an impartial vocational expert, also appeared.  AR 32.

In response to questions from the ALJ, Plaintiff testified that she was 39 years old and lived with her four children, ages 21, 18, 16 and 14.   She had a tenth-grade education and worked as a certified nursing assistant for eighteen years.  She also did some part-time in-home support work and medical transportation of patients.  She last worked on September 28, 2014.  She stopped working because of back surgery.  AR 34-37.

Plaintiff testified that she had her first back surgery on September 29, 2014.  She had a second surgery on November 12, 2014, because she continued to experience pain in her lower back and down her right leg.  An MRI revealed that a screw had moved to the nerve system of her right leg, and she required emergency surgery to remove it.  AR 37-38.

When asked about her abilities, Plaintiff testified that her kids help her with chores around the house.  She can wash dishes and cook, but she needs to sit or lie down for about 20 minutes halfway

---

[3]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

through.  She lies down on her side if the pain is chronic and elevates her legs with pillows.  She can walk about two blocks before needing to sit down for 20 or 30 minutes.  When walking, she takes a walker with a seat.  She can carry a gallon of milk, but she still has pain.  She cannot bend over because her back hurts.  She can drive.  She takes her kids with her to do grocery shopping.  AR 38-40.

When asked about her pain, Plaintiff reported that she has constant, chronic pain in her mid-back down both of her legs.  AR 40.  She takes hydrocodone every day, which eases the pain.  She does not have side effects from her medication.  Doctors have not recommended anything else for her pain other than medications.  Physical therapy made the pain worse.  Surgery has not been suggested.  AR 40-42.

When asked about a typical day, Plaintiff testified that she wakes up and tries to eat breakfast.  She will then lie down again.  She will get up and try to walk around the house a bit, but then lie back down.  She will get up to eat and then lie back down.  Her eldest son helps with meals.  Plaintiff needs help with dressing and showering.   She cannot wash from the waist down and cannot dress from the waist down.  Plaintiff explained that she also has problems with incontinence and her bowels.  She constantly has accidents and wears Pull Ups.  During the day, she probably has to lie down for about three hours.  She is constantly shifting her positions.  AR 42-45.

In response to questions from her attorney, Plaintiff testified that her pain is always a nine or ten out of ten even when she lies down.  She has swelling in her legs and burning in her feet.  She is not receiving any treatment for her swollen legs.  Her pain was worse after surgery.  She had some pain injections, but they made her legs completely numb.  She has been having bladder issues since her first surgery in 2014, and those issues are worsening.  AR 45-48.

Plaintiff testified that she does not do anything for fun.  Other than driving to get groceries, she drives her kids to and from school.  She also goes to the doctor.  She watches TV but does not use a computer.  AR 48-49.

In response to additional questions from the ALJ, Plaintiff testified that she had been seeing a doctor for depression.  She was given medications, but because of the side effects, the medications

were stopped.  She does not go to counseling.  She still has symptoms of depression and also has anxiety.  AR 50-51.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Judith Najarian.  The VE characterized Plaintiff's past work as nurse assistant, home attendant, and van driver.  AR 52.  The ALJ also asked the VE hypothetical questions.   For all of the hypotheticals, the ALJ asked the VE to assume an individual with the same age, education and work experience as Plaintiff.  For the first hypothetical, the ALJ asked the VE to assume an individual who could lift 20 pounds occasionally, 10 pounds frequently, could stand and/or walk for 6 out of 8 hours with no limits on sitting, could occasionally climb ramps or stairs but no ladders, ropes or scaffolds, could occasionally balance or stoop and frequently kneel, crouch or crawl, and could not work in extreme cold or damp environments.  The VE testified that Plaintiff's past work would not be available, but there would be some light unskilled jobs available, such as mail clerk/sorter, router and office helper. AR 53.

For the second hypothetical, the ALJ asked the VE to consider the individual identified in hypothetical one who would need to take unscheduled breaks in half-hour increments two or three times per day in order to lie down.  The VE testified that there would not be any jobs available for such an individual.  AR 53.

For the third hypothetical, Plaintiff's counsel asked the VE to consider the individual in hypothetical one "but the sitting or the standing and walking is down to 2 and the hypothetical individual would need to elevate their legs 50 percent of the time."  AR 54.  The VE testified that there would be no jobs available for such an individual.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 12-25.  Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since September 26, 2014,

her alleged onset date.  The ALJ identified lumbar spondylosis and status-post 2014 lumbar laminectomy and revision surgeries as severe impairments.  AR 17-19.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 19-20.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work and could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk six hours and had no limits in sitting.  She could occasionally balance, stoop, and climb ramps, stairs, ladders, ropes and scaffolds, could frequently kneel, crouch and crawl and must avoid exposure to extreme cold and to damp environments.  AR 20-23.   With this RFC, the ALJ found that Plaintiff could not perform her past relevant work, but there were other jobs in the national economy that she could perform, such as mail clerk/sorter, router, or office helper.  AR 23-25.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  AR 25.

<u>**SCOPE OF REVIEW**</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff contends that the ALJ erred by (1) improperly evaluating opinion evidence from Dr. Calvon Voong, her pain management doctor, and from Mona Attalla, P.A., her primary care provider; and (2) improperly evaluating Plaintiff's subjective complaints.

### A.  The ALJ Did Not Err in Evaluating the Opinion Evidence from Dr. Voong

Plaintiff contends that the ALJ committed reversible error by failing to properly evaluate the opinion of her pain management physician, Dr. Calvon Voong.

On June 14, 2016, Dr. Voong completed a Physical Medical Source Statement.  Dr. Voong indicated that Plaintiff experienced severe low back pain, increasing with bending, lifting and walking. He opined that Plaintiff could walk one block without rest or severe pain.  She could sit for 2 hours and 30 minutes at one time and stand for 2 hours and 15 minutes at one time.  She could sit about 2 hours total in an 8-hour workday and stand/walk about 2 hours total in an 8-hour workday.  She would need a job that permitted shifting positions and would need to walk around for 5 minutes every hour. She also would need unscheduled breaks every hour for 15 minutes due to pain/paresthesia, numbness. She did not need to elevate her legs while sitting but required a cane or other hand-held assistive

---

[4]     The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

device when walking/standing.  She could lift/carry 10 pounds occasionally, but never 20 or 50 pounds.  She could rarely twist, stoop, crouch/squat, or climb stairs and could never climb ladders. She likely would be off task for 25% of a typical workday and would likely be absent from work more than four days a month.  AR 501-06.  The ALJ considered Dr. Voong's assessment at step-three of the sequential evaluation and assigned it "little weight."  AR 23.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant.  *Id.*   Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Id.*   If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*  "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this instance, Dr. Voong's treating opinion was contradicted by the opinions of multiple physicians, including: (1) Dr. Majid Rahimifar, Plaintiff's surgeon, who imposed limitations of "no repetitive back bending, twisting, or heavy lifting of over 40 [pounds]" in April 2015 (AR 325); (2) Dr. A. Nasarabadi, a state agency consultant, who concluded in June 2015 that Plaintiff was limited to light work and could lift and carry 20 pounds occasionally, 10 pounds frequently, and could stand/walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, and could perform postural activities on an occasional to frequent basis.  (AR 60-61); (3) Dr. E. Wong, a state agency consultant, who also concluded in October 2015 that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, and could stand/walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, and could perform postural activities on an occasional to frequent basis (AR 74-75); and (4) Dr. Dale H. Van Kirk, a consultative examiner, who opined in

7

October 2015 that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, could stand and/or walk six of eight hours, could sit without limitation, and could perform occasional postural activities, but should not be required to work in a cold or damp environment (AR 414-18).  As a result of these opinions, the ALJ could only discount Dr. Voong's opinion for specific and legitimate reasons that are supported by substantial evidence in the record.

Having considered the record, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to assign little weight to Dr. Voong's opinion.  First, the ALJ noted that most of Dr. Voong's findings on physical examination were benign and consistently negative for any sensory or motor deficits in contrast with Dr. Voong's opinion of extreme limitations. AR 22, 23.  An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012), quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  Further, an ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancy between treating physician's opinion and clinical notes justified rejection of opinion).  As determined by the ALJ, Dr. Voong's treatment notes through October 2017 were generally benign, consistently negative for any sensory or motor deficits, and with observed findings of a generally normal gait. AR 550, 559, 562, 565, 568, 571, 581, 587, 593, 599, 602, 605, 608, 611, 620, 623, 633-34 (lower extremity strength 5/5; normal straight leg raising; normal sensation).

Second, the ALJ also discounted Dr, Voong's opinion of Plaintiff's limitations based on medical records and diagnostic imaging showing that Plaintiff's spinal condition remained stable since her November 2014 surgery.  AR 23.  An ALJ may reject a treating physician's opinion that is not reflective of the clinical and diagnostic evidence. *See Evans v. Berryhill*, 759 Fed.App'x 606, 608 (9th Cir. 2019) (finding ALJ did not err in rejection of treating physician's opinion that "appear[ed] more reflective of the claimant's subjective complaints and particular clinical presentation than the actual clinical and diagnostic evidence at that time"); *Trevizo*, 871 F.3d at 675 (finding treating physician's opinion entitled to controlling weight only if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques"); *Martinez v. Berryhill*, No. EDCV 15-1563-JPR, 2017 WL 935157, at *8 (C.D. Cal. Mar. 9, 2017) ("Inconsistency with the medical record and lack of diagnostic evidence are permissible reasons for the ALJ to give medical opinions little weight.").

Here, as the ALJ correctly identified, the record contained "no evidence of complications arising from the claimant's revision surgery in November 2014." AR 21. Upon discharge from the hospital, she was able to walk 300 feet without significant discomfort and was in stable condition. AR 21, 246. In April 2015, approximately five months after surgery, her treating surgeon, Dr. Rahimifar, found some residual L5 radiculopathy, but no motor deficits, and recommended that Plaintiff do hydrotherapy and "walk a couple miles daily." AR 21, 325. Dr. Rahimifar imposed limitations only of "no repetitive back bending, twisting, or heavy lifting of over 40 [pounds]." AR 325.

The ALJ also properly noted that "[i]maging studies since the claimant's November 2014 surgery do not show that her spine has deteriorated significantly." AR 22. Lumbar x-rays taken in March 2015, November 2015, July 2016, and January 2017 showed stable Grade 2 spondylolisthesis of L5 on S1, and stable spinal alignment. AR 22, 302, 515, 518, 635. Although a February 2017 lumbar MRI reportedly found progression of anterolisthesis of L5 on S1 as "previously grade I, now grade II," Plaintiff's anterolisthesis of L5 on S1 had been grade II since at least May 2014. AR 358, 507. Also, the February 2017 MRI showed "[m]arked interval progression of discogenic degenerative changes at L4-5, L5-S1" with detailed findings of no central spinal stenosis, but suggestion of severe bilateral L5-S1, mild L4-5 neural foraminal stenosis and mild central spinal stenosis L3-4. AR 507. These findings, however, are consistent with those of May 2014 also showing "severe bilateral neural foraminal narrowing at L5-S1," except that Plaintiff's canal stenosis was described as moderate in May 2014, but only "mild" in February 2017. AR 358, 507.

Third, the ALJ relied on Dr. Voong's own treatment records documenting the effective nature of Plaintiff's pain medications. AR 22, 23. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.2006). Indeed, an ALJ may reasonably cite a claimant's effective treatment as a reason to discount the extreme limitations posited by a treating source. *See Senko v. Astrue*, 279 Fed.App'x. 509, 511 (9th Cir. May 22, 2008) (unpublished) (finding

ALJ properly rejected treating doctor's opinion where opinion was not supported by doctor's treatment notes, which showed claimant was "doing well on her medications"); *Gentry v. Berryhill*, No. 1:17-cv-01250-BAM, 2019 WL 1377033, at *8 (E.D. Cal. Mar. 27, 2019) (discussing that ALJ may properly assign little weight to treating physician's opinion that is inconsistent with the general effectiveness of the claimant's treatment).  Here, as found by the ALJ, Dr. Voong's treatment notes reflected Plaintiff's continued reports that her pain was improved with medications, and these notes also reflected that the pain medications improved Plaintiff's functional ability, including the performance of basic activities of daily living and walking distance. *See*, *e.g.*, AR 549 ("pain gets better by taking pain medications" "current pain medication regimen has helped to improve … performing basic ADL's and walking distance"); *see also* AR 555, 558, 561, 564, 567, 570, 578, 586, 589, 592,  595, 598, 601 ("reasonably good relief"), 604 ("medication regimen is helping patient to improve her functional ability"; "able to perform basic ADL's"), 607, 610, 616, 619, 622.  Based on these treatment records, the ALJ reasonably found that Plaintiff's impairments improved with medications.

Fourth, the ALJ discounted Dr. Voong's opinion based on the opinion of the consultative examiner, Dr. Van Kirk.  AR 23.  An examining physician's opinion can constitute substantial evidence to reject a treating physician's opinion if the examining physician's opinion "rests on his own independent examination." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence") (citations omitted); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (opinion of an examining physician may constitute substantial evidence to discount a treating physician's opinion). Here, Dr. Van Kirk completed an independent physical examination and made clinical findings regarding Plaintiff's limitations that were not as extreme as those identified by Dr. Voong. Dr. Van Kirk found on examination that Plaintiff had a normal heel/toe gait pattern with no detectable limp, straight leg raising of 90/90 in the sitting and supine positions, and normal motor strength in the upper and lower extremities.  Based on his findings, including Plaintiff's range of motion, Dr. Van Kirk concluded that Plaintiff should be able to stand and/or walk cumulatively for six hours out of an eight-

hour day, sit without limitation, and lift and carry 20 pounds occasionally, 10 pounds frequently.  She was limited to occasional postural activities because of residual low back pain and should not be required to work in an extremely cold and/or damp environment because her symptoms were enhanced with cold weather.  AR 414-18.

For these reasons, the Court finds that the ALJ did not err in evaluating the opinion evidence from Plaintiff's treating physician, Dr. Voong.

### B.  The ALJ Did Not Err in Evaluating the Opinion Evidence from PA Attalla

Plaintiff also argues that the ALJ improperly rejected the opinion of Mona Attalla, P.A., her primary care provider.  The Court disagrees.

PA Attalla completed a Physical Medical Source Statement form on August 29, 2017.  She indicated that Plaintiff had been diagnosed with back pain, diabetes mellitus and hypertension and her symptoms included back and leg pain.  PA Attalla identified clinical findings related to Plaintiff's lower back range of motion and tenderness.  AR 509.  She opined that Plaintiff could walk 2 city blocks without rest or severe pain, could sit less than 2 hours in an 8-hour workday and could stand/walk less than 2 hours in an eight-hour workday.   She would need a job that permitted shifting at will and would need to walk around for about 5 minutes every 45 minutes.  She also would need to take unscheduled breaks every 2 hours for 10 minutes each.  AR 510.  Her legs would need to be elevated about 50% of an 8-hour workday and she did not require a can or other hand-held device.  AR 511.  She could lift and carry less than 10 pounds and 10 pounds frequently.  She could never twist, crouch/squat, or climb ladders and could rarely stoop (bend) or climb stairs.   AR 511.  She would be off task about 25% or more of a typical workday.  AR 512.

For claims filed before March 27, 2017, such as the one here, physicians' assistants are not classified as an "acceptable medical source." *See* 20 C.F.R. § 404.1502(a)(8) (including licensed physicians' assistants as acceptable medical sources for impairments within their licensed scope of practice "only with respect to claims filed ... on or after March 27, 2017").  Instead, physicians' assistants are defined as "other sources" not entitled to the same deference as an "acceptable medical source." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Therefore, under the regulations then-applicable to Plaintiff's claims, as a physician's assistant, PA Attalla is not an "acceptable medical

source," but rather an "other source."  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (acceptable medical sources are generally limited to physicians and other qualified specialists); 20 C.F.R. 404.1513(d) ("other sources" include nurse practitioners and physicians' assistants).  Although required to consider evidence from "other sources," an ALJ may discount testimony from these other sources by providing reasons "germane to each witness for doing so." *See Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *Molina*, 674 F.3d at 1111.

Here, the ALJ assigned PA Attalla's opinion "little weight" because it was inconsistent with the physical examinations and diagnostic studies, including medical records showing that Plaintiff's spine had been stable since her November 2014 surgery, her strength and motor functioning were intact, her gait was typically normal and she obtained reasonably good pain relief from her medication. AR 23.

The ALJ did not err by according little weight to PA Attalla's opinion due to its inconsistency with the medical evidence, including the physical examinations and diagnostic studies.  The fact that an "other source" opinion is inconsistent with objective medical evidence in the record is a germane reason to discount it. *Bayliss*, 427 F.3d at1218; *Molina,* 674 F.3d at 1112 (finding ALJ properly rejected opinion of physician's assistant based on inconsistency with objective medical evidence*); see also Shorter v. Saul*, 777 Fed.App'x 209, 211 (9th Cir. 2019) (finding ALJ properly rejected other source opinion of nurse practitioner based on inconsistency with objective medical evidence, including treatment notes showing largely unremarkable examinations and findings of improvement with medication). As discussed above, Plaintiff's physical examinations with Dr. Voong were generally benign and her gait was typically normal.  AR 550, 559, 562, 565, 568, 571, 581, 587, 593, 599, 602, 605, 608, 611, 620, 623, 633-34 (lower extremity strength 5/5; normal straight leg raising; normal sensation).  Similarly, findings from the consultative examiner reflected normal strength and motor functioning and negative straight leg raising.  AR 414-18.  Additionally, diagnostic evidence demonstrated that Plaintiff's spine remained stable since her November 2014 surgery.  AR 358, 507.

The ALJ also considered that Plaintiff's medications provided her with reasonably good pain relief.  AR 23.  Evidence in the record that Plaintiff's medications were improving her condition qualify as a germane reason for discounting PA Attalla's opinion.  *See*, *e.g.*, *Roy v. Colvin*, 656

Fed.App'x 816, 818 (9th Cir. 2016) (finding claimant's improvement with treatment was germane reason to discount the validity of "other source" opinion of therapist). As discussed above, treatment notes from Dr. Voong, Plaintiff's pain management doctor, reflected that Plaintiff's pain medication improved her pain and functional abilities, including the performance of basic activities of daily living and walking distance. *See, e.g.,* AR 549 ("pain gets better by taking pain medications" "current pain medication regimen has helped to improve … performing basic ADL's and walking distance"), 555, 558, 561, 564, 567, 570, 578, 586, 589, 592, 595, 598, 601 ("reasonably good relief"), 604 ("medication regimen is helping patient to improve her functional ability" "able to perform basic ADL's"), 607, 610, 616, 619, 622.

Based on the above, the Court finds that the ALJ provided sufficiently germane reasons for discounting the opinion of PA Attalla.

## C. The ALJ Properly Evaluated Plaintiff's Subjective Complaints

As a final matter, Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective complaints by failing to consider her steady work history. (Doc. 19 at 22-24.) However, "courts have rejected the contention that the ALJ is required to address a claimant's exemplary work history in assessing her credibility." *Coffman v. Berryhill*, No. 2:17-cv-2088 CKD, 2018 WL 6419676, at *6 (E.D. Cal. Dec. 6, 2018) (quotation omitted) (collecting cases); *see also Goldman v. Berryhill*, No. 2:17-cv-2450 DB, 2019 WL 498996, at *5 (E.D. Cal. Feb. 8, 2019*); Smith v. Colvin*, No. 11-3045, 2013 WL 1156497, at *7 (E.D. Cal. Mar. 19, 2013) (rejecting claimant's argument that ALJ was required to consider good work history; noting lack of authority "suggesting an ALJ is bound to make a certain credibility determination based on a lengthy or 'good' work history"); *Henderson v. Colvin*, No. 14-870, 2015 WL 5768934, at *6 (C.D. Cal. Sept. 30, 2015) ("Plaintiff's assertion that his fairly 'consistent and continuous employment for 32 years' is necessarily probative of his credibility is equally unconvincing.").

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the

symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 20-21. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony.

The Court finds that the ALJ provided several specific, clear and convincing reasons for discounting Plaintiff's testimony. First, the ALJ discounted Plaintiff's statements based on the objective medical evidence. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As a preliminary matter, the ALJ acknowledged that the record contained medical evidence consistent with Plaintiff's allegations. Nevertheless, the ALJ found that Plaintiff's statements were not fully consistent with the objective evidence. For instance, the ALJ considered that there was "no evidence of complications arising from [Plaintiff's] revision surgery in November 2014." AR 21. In particular, the ALJ considered that during an examination conducted approximately five months after Plaintiff's second surgery, in April 2015, Dr. Rahimifar found no motor deficits and recommended that Plaintiff "walk a couple miles daily." AR 325. Further, as noted above, Dr. Rahimifar only precluded Plaintiff from "repetitive back bending, twisting, or heavy lifting of over 40 [pounds]." AR 21, 325. Plaintiff's allegations that she had difficulty lifting 10 pounds, could only stand 20 minutes, could not walk more than 2 blocks and had difficulty with minor movements, such as bending and stooping, are not consistent with Dr. Rahimifar's findings and imposed restrictions.

The ALJ also expressly determined that Plaintiff's allegations that she could barely walk and was bedridden for hours a day were inconsistent with the objective clinical findings of the consultative examiner, Dr. Van Kirk, and the finding of Plaintiff's treating physician, Dr. Voong. AR 22. Specifically, the ALJ considered Dr. Van Kirk's observations during a consultative orthopedic examination on October 15, 2015, that Plaintiff walked normally, sat comfortably, and had no difficulty rising from a sitting position or getting on and off the examination table. She also was able

14

to tandem walk and get up on her toes and heels.  AR 22, 415-16.  Her joint range of motion was unremarkable, her reflexes and strength were normal, and her straight-leg-raise tests were negative to 90 degrees in both the sitting and supine positions.  AR 22, 416-17.  The ALJ also considered that Dr. Voong's examination findings were consistently negative for any sensory or motor deficits and Dr. Voong generally observed that Plaintiff's gait was normal.  AR 22, 550, 559, 562, 565, 568, 571, 581, 587, 593, 599, 602, 605, 608, 611, 620, 623, 633-34 (lower extremity strength 5/5; normal straight leg raising; normal sensation).

Second, the ALJ appropriately considered that, in contrast to her testimony, Plaintiff's medications provided reasonably good pain relief without adverse side effects.  AR 22.   The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre*, 439 F.3d at 1006 ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits.")  Dr. Voong's treatment records consistently reflected that Plaintiff's medication provided reasonably good pain relief and improved her functional abilities.  *See* AR 549 ("pain gets better by taking pain medications" "current pain medication regimen has helped to improve … performing basic ADL's and walking distance"); *see also* AR 555, 558, 561, 564, 567, 570, 578, 586, 589, 592, 595, 598, 601 ("reasonably good relief"), 604 ("medication regimen is helping patient to improve her functional ability"; "able to perform basic ADL's"), 607, 610, 616, 619, 622.

The Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error, and Plaintiff has not challenged the ALJ's stated reasons for discounting her subjective complaints.  Moreover, even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

**DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Jennifer Ann Rodriguez.

IT IS SO ORDERED.

Dated:   **May 26, 2020**                          /s/ *Barbara A. McAuliffe*
                                                   UNITED STATES MAGISTRATE JUDGE